**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mylan Pharmaceuticals Incorporated, | No. CV-14-00119-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Insys Therapeutics Incorporated, | |
| Defendant. | |

Plaintiff Mylan Pharmaceuticals Inc. has filed a motion to enforce a settlement agreement. Doc. 31. The motion is fully briefed. For the reasons that follow, the Court will deny the motion.[1]

**I.     Background.**

Mylan and Defendant Insys Therapeutics Inc. are parties to a Supply and Distribution Agreement (the "Supply Agreement") which both parties allege the other has breached. Mylan commenced this action in February 2014 and filed a motion for a temporary restraining order and a motion to compel arbitration. Docs. 4, 10. A hearing was scheduled for April 3, 2014. A few days before the hearing, the parties advised the Court that the matter was settled. The Court entered an order instructing the clerk to dismiss the action after 60 days unless a stipulation to dismiss was filed. Doc. 29. The

---

[1] The request for oral argument is denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

clerk dismissed the action with prejudice on June 6, 2014. Doc. 30. It seems, however, that the parties disagree on whether a settlement was reached. Mylan insists that a settlement was reached on April 1, 2014 and asks the Court to enforce it. Doc. 31 at 4. Insys responds that no definitive terms were agreed upon and that any agreement reached was only in principle. Doc. 32 at 1-2.

## II. Legal Standard.

The "enforcement of [a] settlement agreement[] . . . [is] governed by general contract principles." *Donahoe v. Arpaio*, 872 F. Supp. 2d 900, 903 (D. Ariz. 2012), *aff'd sub nom. Wilcox v. Arpaio*, 753 F.3d 872 (9th Cir. 2014) (quoting *Emmons v. Sup. Ct. in and for Cnty. of Maricopa*, 968 P.2d 582, 585 (Ariz. Ct. App. 1998); *Hisel v. Upchurch*, 797 F. Supp. 1509, 1517 (D. Ariz. 1992)). In order to form an enforceable contract, "there must be an offer, an acceptance, consideration, and sufficient specification of terms so that the obligations involved can be ascertained." *Donahoe*, 872 F. Supp. 2d at 903 (quoting *Savoca Masonry Co., Inc. v. Homes & Son Const. Co., Inc.*, 542 P.2d 817, 819 (Ariz. 1975)).[2]

## III. Analysis.

Mylan submits correspondence between the parties that occurred during March and April 2014. Counsel for Mylan sent an email on March 28, 2014 offering to settle the matter for $1.5 million and agreeing to terminate both the contractual relationship between the parties and all existing litigation. Doc. 31-1 at 2. Insys made a counter offer the following day of $500,000, to which Mylan responded with an offer of $1.25 million. *Id.* at 1-2. Insys responded with a final offer of $750,000. *Id.* at 1. Mylan alleges that counsel for both parties spoke on April 1, 2014 and agreed that Insys would pay $750,000 and that the Supply Agreement would be terminated. Doc. 31 at 4. Counsel for

---

[2] Insys initially argues that the Court does not have jurisdiction to consider this motion. Doc. 32 at 8. Insys is incorrect. "A motion to enforce [a] settlement agreement . . . is a separate contract dispute requiring its own independent basis for jurisdiction." *O'Connor v. Colvin*, 70 F.3d 530, 531 (9th Cir. 1995). There is an independent basis for jurisdiction given that the parties are diverse and the amount in controversy is more than $75,000. *See* 28 U.S.C. § 1332(a).

both parties then contacted the Court, which resulted in the Court's order instructing the clerk to dismiss the case in 60 days. *Id.*; Doc. 29.

On April 14, 2014, Insys sent a letter to Mylan which stated that "[t]he purpose of this letter is to outline the terms of the agreement in principal [sic] that we have reached to settle all pending disputes between Mylan and Insys and to 'wind down' the [Supply Agreement]." Doc. 31-2 at 1. Mylan states that this document contained terms that were not part of any prior communications and to which it did not agree. Doc. 31 at 4. Mylan responded on April 28, 2014 with a letter explaining which terms were acceptable to Mylan. Doc. 31-3. Insys responded on May 1, 2014 with this statement: "Given the separation between our proposed term sheet and your response, we are proceeding with the arbitration." Doc. 31-4. Mylan states that the parties continued to negotiate over the next two months and that a settlement agreement resulting from those negotiations was rejected by Insys "without explanation." Doc. 31 at 5.

The Court is not convinced that an enforceable settlement agreement existed on April 1, 2014. A contract must include "sufficient specification of terms so that the obligations involved can be ascertained." *Donahoe*, 872 F. Supp. 2d at 903. The parties' communications did not specify the precise nature of the wind-down of the Supply Agreement or the releases of claims that would be part of the settlement, and clearly indicated a belief by both parties that negotiation was still required on these issues. The March 28 email from Mylan's counsel stated that Mylan "would recommend the use of a mutual general release, and a fair and appropriate wind down period" (Doc. 31-1 at 2), to which Insys' counsel responded: "we can discuss further the general release and a reasonable wind-down period" (*id.*). An April 1, 2014 email between the attorneys for Insys states: "[Mylan] will agree to 750. They say they need more time to work out issues re (1) current stock and (2) existing Purchase Order's and how to wind-down relationship. I asked whether they wanted the PO's filled and they said they didn't know." Doc. 32-1 at 10. Mylan's April 28, 2014 letter to Insys states that it "outlines the terms of a final resolution that is acceptable to Mylan," notes that the parties should

"request a stay of the [arbitration] proceedings to allow for final resolution of the settlement terms," and asks that "Insys incorporate the terms identified above into a *proposed* Settlement Agreement and provide that document . . . to Mylan." Doc. 31-3 at 1-3 (emphasis added). These communications show that Mylan intended to continue to negotiate issues related to the wind-down of the parties' relationship.

Although Mylan argues that the Court may enforce an agreement even if terms are missing, and that the Supply Agreement already contains wind-down provisions (Doc. 33 at 5), this argument is belied by the parties' email communications showing that both parties intended to negotiate issues related to the winding down of their relationship rather than adopt the provisions of the Supply Agreement. Given the lack of clarity as to material terms of the alleged settlement agreement, the Court cannot find that the parties' communications were specific enough to form an enforceable contract. The parties did not reach a "sufficient specification of terms so that the obligations involved can be ascertained." *Donahoe*, 872 F. Supp. 2d at 903. Moreover, as Insys points out, Mylan's subsequent conduct is not indicative of a belief that an enforceable settlement agreement was reached on April 1, 2014 – the parties have proceeded with arbitration and settlement negotiations, and Mylan did not file this motion until two months after the case was dismissed. *See, e.g.*, Doc. 32-1 at 31-32, 36, 41, 44-45

**IT IS ORDERED** that Plaintiff's motion to enforce settlement (Doc. 31) is **denied**.

Dated this 12th day of September, 2014.

_____
David G. Campbell
United States District Judge